# COURT OF APPEALS.

John Graham, appellant, agt. Abia Selover, respondent.

Where a complaint contains two causes of action, and the referee finds from the evidence that there were no such causes of action, this court will not interfere with such finding.

Where, after the close of the testimony, and the cause summed up, the further consideration of the case is postponed, to enable the plaintiff to move at special term to amend his complaint, which motion is made and denied, it will not be held as error by this court, although the referee might have allowed the amendment if the motion had been made before him, especially where the demand of the plaintiff is very stale, if not barred by the statute of limitations, and not, therefore, entitled to any favor from the court.

*It seems*, that where the plaintiff has fully ratified a settlement and discharge made by his agent of a claim against another, in favor of the plaintiff, the debtor is discharged therefrom and the plaintiff is bound, whether the agent had authority to make such settlement and discharge or not.

*January*, 1873.

Appeal from a judgment of the general term of the supreme court of the first judicial district. The cause was tried by a referee, and his report, which shows the facts sufficiently, is as follows:

*To the Supreme Court of the State of New York:*

In pursuance of an order entered in the above action, dated the 22d day of June, 1867, by which it was ordered that said action be referred to me to hear, try and determine all the issues therein, I, William Mitchell, the referee therein named, do respectfully report:

I have been attended by both parties and by their respective counsel, and have heard and examined the witnesses and

evidence produced by them respectively, and I do find the following matters of fact:

On the 23d November, 1850, the firm of Middleton & Hood were doing business in San Francisco, and were composed of John Middleton and John M. Hood. At the same time the firm of Selover & Co., composed of the defendant and said John Middleton, were owners and keepers of the Union Hotel at that place.

The plaintiff then and there sold to Middleton & Hood the bark Carlisle and its cargo, with all on board of her, for $20,500, payable $5,000 in cash, $5,500 in the note of Middleton & Hood, at thirty days, and $10,000 to be in the draft of Middleton & Hood on Selover & Co., at three months. The purchase was made for the benefit of Middleton & Hood alone, and not for the benefit of Selover & Co., and Selover accepted the draft for the accommodation of Middleton.

About December, 1851, the plaintiff placed the acceptance in the hands of F. Argenti & Co., bankers, in San Francisco, as his agents, and as security for advances made to him.

The plaintiff informed Middleton, before the acceptance matured, that Argenti & Co. had the acceptance for collection, with full power to settle with them, and this information (as I infer) was correct, and that Argenti & Co. afterwards acted under it.

In May, 1851, the Union Hotel was burnt down. The fire made Selover & Co. largely insolvent. In June of that year Selover left San Francisco, and arrived in this city in the following July, and here met the plaintiff, and informed him of the loss sustained by Selover & Co., and that Argenti was pressing them for payment, and wished the plaintiff to consent to the delivery by Argenti of the acceptance to Selover & Co. on their paying some sum to be agreed upon, in full settlement of all claim of plaintiff against Selover & Co. In August of that year it was agreed between the plaintiff and defendant that the plaintiff should authorize in writing Argenti & Co. to deliver the acceptance to Selover & Co. in

full settlement of all plaintiff's claims against them, on their paying to Argenti & Co. $8,500.

The authority to Argenti was never received by him (as I infer), but in August, 1852, Argenti & Co., acting as such agents and creditors of the plaintiff, and with such authority from him, agreed to accept and did accept the individual notes of said John Middleton for $4,000, in all in full for such acceptance, said notes being payable at a then future day; said notes were subsequently paid to Argenti & Co., and the acceptance surrendered by Argenti & Co. to said Middleton. After the settlement was made by Argenti & Co., and the acceptance surrendered by them, and (as I infer) in the year 1852, Argenti & Co. rendered an account of the said settlement to the plaintiff, and of the balance coming due to him under the same, and paid such balance to him, and at the same time informed the plaintiff that they had delivered the acceptance to Selover or to Middleton. No objection (as far as appears) was ever made by the plaintiff to this settlement or to the account rendered. The said acceptance was the only liability that the defendant ever was under to the plaintiff, and that was jointly with Middleton, who is still living.

On the 27th October, 1851, Selover and Middleton dissolved their partnership, and Middleton assumed all the debts and liabilities of Selover & Co., and Selover transferred to him all the assets and property of said firm, and Middleton executed to Selover his bond to indemnify Selover against all the debts and liabilities of said firm.

I find as matter of fact, independently of the said joint liability, and of the facts herein stated subsequently to the statement of that joint liability, that the plaintiff assented to and ratified the settlement made by said Argenti & Co., and, as matter of law, that said defendant (as well as said Middleton) is discharged from all liability to the plaintiff, arising out of said acceptance.

I further find, as matter of fact, that no account was stated and settled between the plaintiff and the defendant, as stated

in the complaint; that the plaintiff did not promise or agree to pay the plaintiff, or Argenti & Co., the sum mentioned in the complaint, or any other sum, except as hereinbefore stated, and did not promise to pay the remainder (after paying Argenti & Co.) to the plaintiff, by drafts to be sent to him from California, or in any other way; and that plaintiff did not deliver to the defendant an order on Argenti & Co. for the delivering to the defendant of said acceptance, or of any drafts, and that the defendant did not pay to Argenti & Co. $3,250 on account of any indebtedness.

As to the second cause of action, I find, as matter of fact, that the plaintiff did not pay or advance for the defendant the sum of $500 or any other sum, nor did the defendant promise to repay that or any other sum to the plaintiff, either as soon as he returned to California or otherwise.

I also find, as matter of fact, that more than six years have elapsed since any cause of action, set forth in the complaint, accrued in favor of the plaintiff, against the defendant.

I accordingly find that the defendant is entitled to judgment against the plaintiff, and to have the action dismissed on the merits, with costs to the defendant, to be adjusted.

J. A. SHOUDY, *for appellant.*

In reference to the statute of limitations—that it is not retroactive, cited *Stone* agt. *Fowler* (47 *N. Y.*, 566).

As to the point that it was incumbent on the defendant to prove his defense, and establish his presence in the state the full period of the statute of limitations, cited *Bennett* agt. *Cook* (43 *N. Y.*, 537).

As to the point whether the agreement of a creditor, without any new or fresh consideration, to take less than his debt, and to release the debtor is valid, cited *Keeler* agt. *Salisbury* 33 *N. Y.*, 648; *Hill* agt. *Beebe*, 13 *N. Y.*, 563).

As to the power of a referee to amend a complaint, cited (*Code*, § 272; *id.*, § 173).

Graham agt. Selover.

Coles Morris, *for respondent.*

As to a ratification by the plaintiff of the settlement between Middleton and Argenti & Co., whether the latter had any original authority to make it or not, cited *Leslie* agt. *Wiley* (47 *N. Y.*, 648); *Palmerston* agt. *Huxford* (4 *Denio*, 166;) *Dunlap's Paley*, 171, *note ; Story on Agency*, §§ 252, 256).

As to the surrender of the acceptance by Argenti & Co., under the circumstances, was equivalent to a release of the unpaid amount due thereon, cited *Ellsworth* agt. *Fogg* (35 *Vermont R.* [6 *Shaw*, 577, 578] ) ; *Sicey* agt. *Sicey* (3 *Barr*, 251) ; *Beach* agt. *Endress* (51 *Barb. S. C. R.*, 577, 578); *Albert* agt. *Zeigler* (29 *Penn. Rep.*, 50) ; *Shepherd's Touchstone* (*p.* 70); 2 *Equity Cases* (*Abr.*, 617), where lord Hardwick says: "If an obligee delivers up a bond with intent to discharge the debt, the debt will certainly be thereby discharged."

As to the statute of limitations—commenced to run on the acceptance on the 10th July, 1851—summons was served March 20th, 1866. Defendant's several absences from the state during the time aggregated six years six months and sixteen days, besides five months and fourteen days when he was abroad on business, leaving his family here, which, if deducted from the former time, would leave the defendant six years one month and two days a resident of this state. Claimed that the defendant was a resident of this state, and that during either of his absences in question he did not reside out of the state, cited *Code* (§ 100); 2 *R. S.* (297, § 27); *Hickok* agt. *Bliss* (34 *Barb.*, 321).

As to the application of *section* 100 *of the Code* to the remedy only, and not the contract, cited also *Morse* agt. *Goold* (11 *N. Y. R.*, 288) ; *Sedgwick on Stat. and Const. Law, pp.* 658, 659); *Sturges* agt. *Crownenshield* (4 *Wheat.*, 206) ; *Parsons on Contracts* (4 *ed.*, vol. 2, *p.* 379); *Dash* agt. *Van Kleeck* (7 *John*, 477).

As to the effect of the payment made by Middleton in August, 1852, on the defendant, being after the dissolution of defendant and Middleton, it did not affect defendant, cited *Van Keuren* agt. *Parmelee* (2 *N. Y. R.*, 523); *Winchell* agt. *Hicks* (18 *N. Y. R.*, 558); *Shoemaker* agt. *Benedict* (1 *Kern.*, 176).

PECKHAM, J.—The complaint sets forth two causes of action. The first, after stating as matter of inducement that the defendant was indebted to him in a large sum of money upon drafts drawn upon and accepted by defendant, alleges that the parties accounted together, and an account was stated and settled, whereby the defendant was ascertained to be indebted to the plaintiff in the sum of $14,327.77, which he promised to pay, as particularly specified in the complaint.

The second states a loan of $500 to the defendant.

The referee to whom the case was referred, finds, in substance, that there was no such accounting and no such promise. As to the second claim, he finds that there was no such loan.

. With these findings this court cannot interfere. There was evidence to sustain both.

It is quite clear that the complaint is not upon the drafts. It is carefully drawn, and is confined to the accounting and the promise to pay, based upon the indebtedness and "for other good and valuable considerations."

After the close of the testimony and after the cause had been summed up, the further consideration of the case was postponed to enable the plaintiff to apply at special term of the supreme court to amend his complaint. The motion was made and denied. The demand was very stale, some fourteen years old; and if the statute, under the circumstances, was not a bar, it was not entitled to any particular favor from the court.

Again, it appeared, and was found as a fact, that the defendant, with another, was merely an accommodation acceptor for

Graham agt. Selover.

the benefit of Middleton & Hood, and I think the settlement of the draft by Middleton with Argenti & Co., who held it as security for advances made to the plaintiff, and its delivery by them to Middleton, was a discharge of the defendant.

This settlement and delivery are found by the referee to have been fully ratified by the plaintiff, if not done by his prior authority.

But it is not necessary to consider this point.

The testimony claimed to have been erroneously received, as to the intended residence of the defendant, in this view is made wholly immaterial.

I have carefully examined the several other points made by plaintiff, as to the receipt and rejection of evidence, and am of opinion that no error to plaintiff's prejudice was committed.

The judgment should be affirmed.

PECKHAM, J., reads for affirmance.

All agree.